Filed 4/19/22  P. v. VegaLopez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ABRAHAM VEGALOPEZ,<br><br>Defendant and Appellant. | F081611<br><br>(Super. Ct. No. 18CR-05771)<br><br><br>**OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  John D. Kirihara, Judge.

Audrey R. Chavez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein, Cameron M. Goodman and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*]     Before Levy, Acting P. J., Peña, J. and Meehan, J.

# INTRODUCTION

Defendant Abraham VegaLopez was convicted by jury of four counts of continuous sexual abuse of a child under the age of 14 years (Pen. Code, § 288.5, subd. (a)).[1]  On July 14, 2020, defendant was sentenced to an aggregate determinate term of 40 years as follows:  the court imposed the upper term of 16 years on count 1; a consecutive middle term of 12 years on count 2; and two fully consecutive lower terms of six years each on counts 3 and 4.  The court imposed a $300 restitution fine, a $160 court operations assessment, and a $120 court facilities assessment.  Defendant filed a notice of appeal on August 18, 2020.  On the prosecutor's motion on August 19, 2020, the trial court amended the $300 restitution fine in September 2020 and imposed a $10,000 restitution fine instead.

Defendant argues three of these convictions must be reversed and vacated because only one conviction under section 288.5, subdivision (a), is permitted as to a single victim; and defendant maintains the per-conviction court operations and facility assessments must be reduced to account for the reversal of these convictions.  Defendant also argues the trial court lacked jurisdiction after the notice of appeal was filed to amend the restitution fine, and the higher amended $10,000 fine must be vacated.  The People concede all of these issues.

After briefing was complete in this case, Senate Bill No. 567 (Reg. Sess. 2021–2022; Senate Bill 567 or Sen. Bill 567), which became effective on January 1, 2022, amended section 1170.  (Legis. Counsel's Dig., Sen. Bill 567, Stats. 2021, ch. 731, § 1.3, pp. 25–33.)  We asked the parties to submit supplemental briefs addressing whether Senate Bill 567 applies here and, if so, whether resentencing was necessary.  The parties agree Senate Bill 567 applies retroactively to nonfinal cases on appeal, such as this one, but they disagree whether resentencing is warranted.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

We agree with the parties that counts 2, 3 and 4 must be reversed and vacated. We also agree that Senate Bill 567 applies retroactively and conclude the trial court's imposition of the upper term on count 1 warrants resentencing pursuant to the sentencing law amendments effected by Senate Bill 567. As such, the remaining issues as to the fines and assessments are moot. The matter shall be remanded for a full resentencing hearing pursuant to Senate Bill 567; we express no opinion as to how the trial court should exercise its discretion thereunder.

## BACKGROUND

Defendant was charged with committing multiple sex crimes and making a criminal threat against his niece, K. A first amended information charged defendant with four counts of continuous sexual abuse of a child under section 288.5, subdivision (a), each relating to a separate one-year period from 2006 to 2009 (counts 1–4); two counts of rape by threat (§ 261, subd. (a)(6); counts 5 & 6); making a criminal threat in November 2016 (§ 422, subd. (a); count 7); and false imprisonment by violence in October 2016 (§ 236; count 8).

At trial, K. testified she moved into defendant's home when she was six years old—defendant was married and had two children at the time. Defendant began sexually abusing K when she was under 10 years of age and still in elementary school. K. testified about two specific instances she could remember from that time period. K. testified defendant inserted his penis and his fingers into her vagina multiple times a week through elementary, middle and high school. He often threatened her that if she tried to get away, he would find her and make her pay for betraying him.

When K. finished high school, she was accepted to a college in Merced for fall 2014. Defendant was opposed to her moving away from the family home near Los Angeles, but he ultimately relented. When K. visited the family at Thanksgiving time, defendant insisted she quit and come home. When K. objected, defendant became physically violent—he threw water in her face and then began hitting her. K. insisted she

be able to return to school, and defendant told her that if she returned to school, she was dead to him and the family and she should not contact them. He drove her back to Merced and repeated all this along the way. He took her cell phone and K.'s mother helped her pay her expenses. Defendant later apologized.

When defendant came to pick up K. for winter break in December 2014, he coerced her to engage in sexual intercourse with him at her apartment—all her roommates were gone for the holiday break when he arrived, and he told her that if she did not have sex with him, he would be angry. Afraid of his anger, K capitulated. In January 2015, defendant moved the entire family to an apartment in Merced. At defendant's instance, K. moved back in with the family. After she moved back in with the family, the sexual encounters between defendant and K. resumed. K. testified she was required to have sex with defendant to be allowed to attend her college classes, and on occasions when she refused, he locked himself in her room with all of her school things and would not let her access them.

When K.'s birthday approached, she had asked defendant whether she could have a male friend over to celebrate with the family. The day before the birthday, however, defendant asked K. to deposit money into a checking account, which she did; the account was overdrawn, and when defendant discovered K. had deposited the money anyway, he became angry. He canceled the birthday plans and told K. to text her friend and cancel; he then took her phone away and insisted they have sex. Because he was still angry, and because he regularly predicated his permission for various things on sex, such as leaving the house, K. acquiesced to his demand.

In the fall of 2016, K. joined a professional fraternity at school. She had borrowed defendant's car to drive to campus, but returned a half hour later than planned. Defendant was so incensed with her delay that he forbade her from continuing with the fraternity. When K. became upset, he sent her to her room without food and locked her in her room with him. When he went to work that night, K. decided to leave.

4.

She contacted a friend, and they hid from defendant at a motel for a couple of days. After she left for the motel, her cousin N. messaged her several times through Snapchat that defendant was "freaking out" because K. was gone. Defendant, meanwhile, began messaging K.'s other friend, B., and threatened to file a missing person's report if K. did not return home. K. decided to call defendant to prevent him from doing that; he wanted to know where she was, and when she would not tell him, he started crying and begged her to come back. He then switched to threatening her not to betray him otherwise he would make her pay; he had always threatened her about not telling anyone. He said her "days were numbered," and he was going to find her.

After spending a couple of nights at the motel, K. went to her friend B.'s residence. She told B. about the sexual abuse, and B. encouraged K. to report it to the police. K. agreed, and B. and B.'s parents accompanied K. to the police station where K. made a report after which a temporary restraining order was issued.

About a year later, the police recommended K. attempt to send a text message to defendant to attempt to obtain a confession or admissions of guilt. K. did so and asked defendant pointed questions about why he had engaged in a sexual relationship with her and why he had done so at times when her cousin N. was very young and in the room; he asked her if she was going to return home and claimed he was not avoiding her questions and that she would "'see'" in a short time.

Defendant's wife, son, and daughter testified at trial on defendant's behalf. Defendant's wife testified K. moved in with the family when K. was six years old. The apartment they lived in was very small and had only two bedrooms. Defendant worked long hours, and slept during the day wherever there was less noise. She never saw defendant go into a bedroom with K. nor did she ever see anything inappropriate between the two. She denied K. ever told her anything about defendant abusing her. Defendant's son testified he never saw defendant treat K. differently; while K. would sometimes be alone with defendant, it did not happen very often; K. never seemed depressed.

5.

N., defendant's daughter, testified nothing ever seemed odd between defendant and K.; defendant worked two jobs so there were very few hours he was actually home, and when he was, he would sleep, sometimes in K. and N.'s bedroom. N. admitted defendant was angry when K. moved out in the fall of 2016, and he had said whoever took her from the house was going to pay. N. noticed a lot of arguing between her parents and K. about her staying late at the college, but N. never saw anything unusual or inappropriate. K. never told N. that defendant was abusing her.

Defendant also testified and denied all of K.'s allegations. During K.'s childhood, he worked a lot of extra hours, and he would often sleep when he was home. He sometimes slept in N. and K.'s bedroom. When K. was accepted to college in Merced, the distance troubled him, but he never forbade her from going—in fact, he was the one who drove her there. He also helped her financially with rent and food. When K. came home for Thanksgiving her first year of school, he told her things had been financially difficult for him, and he was not going to be able to continue helping her financially. K. suggested they move to Merced since rent was cheaper—K. was the one who found them the apartment. The family moved in January 2015, but he stayed working near Los Angeles while living in his car.

He moved to Merced a few months later. Defendant admitted there might have been an argument with K. about a deposited check, but he denied cancelling her birthday plans. He had fully supported K.'s fraternity admission, but realized she was going to have very little time for the family. When she returned his car late on one occasion, he was upset with her, but they did not really argue about it. He was at work the night when K. left. She sent him a text before she left, and that worried him, so he went home. He wanted to find out where she was, and he was planning to call the police. He went out looking for her. K. messaged him in October 2017, and they also spoke by telephone. He was unaware police were listening to the phone call. When K. had told him she wanted the sex to stop, he denied telling her not to mention it—he claimed he was asking

her to stop saying those things.  He also denied saying he wanted to talk with her about that in person.

The prosecutor moved to dismiss count 8 for false imprisonment by violence, which the court granted.  The jury found defendant guilty on counts 1 through 4 for continuous sexual abuse (§ 288.5, subd. (a)); not guilty on count 7 for making a criminal threat (§ 422, subd. (a)); and deadlocked on counts 5 and 6 for rape by threat (§ 261, subd. (a)(6)).  Counts 5 and 6 were thereafter dismissed.

On July 14, 2020, defendant was sentenced to an aggregate determinate term as follows:  on count 1, the court imposed the upper term of 16 years; a consecutive middle term of 12 years on count 2; and two consecutive lower terms of six years each on counts 3 and 4.  In imposing this sentence, the court noted factors in aggravation that included that the crime involved violence, great bodily harm or threat of bodily harm, or other acts displaying high degrees of cruelty, viciousness or callousness.  The court noted the sex acts were repeated many times over several years.  The court found the victim particularly vulnerable as she was defendant's niece and came to live with defendant's family at a young age—she was dependent upon defendant for protection and did not receive that.  The manner in which the crime was carried out included planning because there were many incidents, and methods were used to hide the acts from other family members.  Finally, the court found defendant had taken advantage of a position of trust and confidence.  The court explained that while the People had sought imposition of the aggravated term on all counts, the court chose the terms it did to "achieve some balance between the various factors on both sides" to arrive at an appropriate sentence overall.

The court imposed various fines, fees and assessments:  $2,000 in victim restitution payable to the Victim's Compensation Board (§ 1202.4, subd. (f)); a $300 restitution fine (§ 1202.4, subd. (b)), and a corresponding $300 parole revocation fine, suspended (§ 1202.45); a $300 sex offense fine (§ 290.3); $160 in court operation

7.

assessments (§ 1465.8, subd. (a)); and $120 in court facility assessments (Gov. Code, § 70373, subd. (a)(1)).  Defendant filed a notice of appeal on August 18, 2020.

On August 19, 2020, the prosecution filed a motion to modify the restitution fine to $10,000.  At a hearing on September 15, 2020, over defense objection, the trial court increased the restitution fine to $10,000.

## DISCUSSION

## I.     Multiple Convictions of Continuous Sexual Abuse are Improper

### A.     Background

The operative first amended information charged defendant with four counts of continuous sexual abuse of a minor child under the age of 14 years pursuant to section 288.5.  The counts were divided into one-year time periods from 2006 through 2009.

Section 288.5, subdivision (a). provides that "[a]ny person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time … of the offense, … is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years."

Section 288.5, subdivision (c), places limitations on how the crime may be charged:

> "No other act of substantial sexual conduct, as defined in subdivision (b) of Section 1203.066, with a child under 14 years of age at the time of the commission of the offenses, or lewd and lascivious acts, as defined in Section 288, involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative.  *A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim.*" (§ 288.5, subd. (c), italics added.)

8.

In *People v. Johnson*, the California Supreme Court explained that section 288.5 was enacted in 1989 to solve "a recurrent problem in the prosecution of so-called resident child molesters:  Because of the age of the victim and the repeated and continual nature of the offenses, trial testimony often failed to identify with specificity the date or place of particular charged acts, and the defense's ability to respond to specific charges arguably was impaired."  (*People v. Johnson* (2002) 28 Cal.4th 240, 242.)  Prior to the statute's enactment, Courts of Appeal were reversing "convictions obtained through the use of such 'generic' testimony .…"  (*Ibid.*)

In response to this, the Legislature crafted section 288.5 to require the trier of fact to unanimously agree that the requisite number of sexual acts occurred, but they did not need to agree on which acts constituted the requisite number.  Section 288.5, subdivision (c), also imposes certain limits on the prosecution's power to charge the crime:  a defendant may be charged with only one count of continuous sexual abuse unless multiple victims are involved, in which case a separate count may be charged for each victim; and no other felony sex offense involving the same victim may be charged in the same proceeding with a charge under section 288.5 unless the other charged sex offenses occurred outside the time period charged under section 288.5 or the other offense is charged in the alternative.  (§ 288.5, subd. (c); *People v. Johnson*, *supra*, 28 Cal.4th at p. 243.)

Based on the plain language of the statute and the explanation provided in *People v. Johnson,* the parties agree, and we concur, that section 288.5 unambiguously and expressly precludes charging four separate counts of continuous sexual abuse under the statute that are related to the same victim.  (§ 288.5, subd. (c) ["A defendant may be charged with only one count under this section unless more than one victim is involved .…"].) Counts 1 through 4 here all relate to a single victim—K.  While these section 288.5 counts are each divided into separate and discrete time periods, those time

frames are only relevant if *other* sex crimes are charged. (*Id.*, subd. (c).) Three of the four convictions under section 288.5, subdivision (a), are improper and must be reversed.

## II. Remand for Resentencing is Warranted

The parties agree there are additional sentencing issues that must be corrected, including court operation and facility assessments that were imposed on a per-conviction basis and must now be reduced, and that the trial court lacked jurisdiction to amend the restitution imposed after the notice of appeal was filed. The parties initially agreed these issues could be addressed without any need for resentencing.

Since briefing was completed in this appeal, however, the Governor signed Senate Bill 567, which amended section 1170 effective January 1, 2022. (Legis. Counsel's Dig., Sen. Bill 567, Stats. 2021, ch. 731, § 1.3, pp. 25–33; Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a).) Amended section 1170, among other things, limits a trial court's ability to impose an upper term sentence. (§ 1170, subd. (b)(2).) Relevant here, the court imposed the upper term for the conviction on count 1. We asked the parties to address in supplemental briefs whether the amended sentencing law applies and, if so, whether resentencing is required as a result. The parties agree Senate Bill 567 applies retroactively to this case, but disagree the changes in the law require resentencing.

### A. Senate Bill 567

At the time of defendant's sentencing in July 2020, section 1170, former subdivision (b), provided that the choice between sentencing a defendant to the lower, middle, or upper term "shall rest within the sound discretion of the court," with the court to determine which term "best serves the interests of justice." (*Ibid.*)

Pursuant to Senate Bill 567, section 1170 now precludes a trial court from imposing a sentence exceeding the middle term for any offense with a sentencing triad unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a

10.

reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (b)(2).) Notwithstanding this limitation, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id.*, subd. (b)(3).)

### 1. Amendments to Section 1170 Apply Retroactively

We agree with the parties that the amendments to section 1170, subdivision (b), pursuant to Senate Bill 567, apply retroactively in defendant's case because they make ameliorative changes in the law that apply to all nonfinal convictions. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039 (*Flores*).) "We 'assume, absent evidence to the contrary, that the Legislature intended an "amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date."' (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341.) 'For the purpose of determining the retroactive application of an amendment to a criminal statute, the finality of a judgment is extended until the time has passed for petitioning for a writ of certiorari in the United States Supreme Court.' (*Id.* at pp. 341–342, citing *People v. Vieira* (2005) 35 Cal.4th 264, 305–306.)" (*Id.* at p. 1039.)

### 2. Resentencing is Warranted

The parties disagree, however, on whether resentencing is necessary. Defendant maintains resentencing is the appropriate remedy: the trial court imposed the upper term on count 1 based on aggravating factors that did not include prior convictions, were not stipulated to by defendant, or found true by the jury. Defendant contends the trial court must resentence defendant within the new parameters of section 1170, subdivision (b). The People maintain, based on *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*), the aggravating factors the trial court relied on to impose the upper term all unquestionably would have been found true beyond a reasonable doubt by the jury. As such, resentencing under the new law is unnecessary.

11.

The trial court considered five aggravating factors in imposing the upper term for count 1: (1) the crime involved great violence; the threat of great bodily harm; or a high degree of cruelty, viciousness and callousness (Cal. Rules of Court, rule 4.421(a)(1)); (2) the particular vulnerability of the victim (*id.*, (a)(3)); (3) defendant made threats against K. to ensure her silence (*id.*, (a)(6)); (4) the crime involved planning to hide the abuse from the rest of the family (*id.*, (a)(8)); and (5) defendant took advantage of a position of trust to commit the crime (*id.*, (a)(11)). None of these factors were admitted by defendant or found true by the jury, as now required by Senate Bill 567 and amended section 1170, subdivision (b)(2).

In the context of a Sixth Amendment jury-trial-right violation in the imposition of an upper term sentence, "if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury," the error is harmless. (*Sandoval, supra*, 41 Cal.4th at p. 839; see *People v. Osband* (1996) 13 Cal.4th 622, 728 [single aggravating factor is sufficient to support an upper term].) Assuming *Sandoval*'s prejudicial error analysis applies in this context (see *People v. Flores* (2022) 75 Cal.App.5th 495, 500–501 [applying *Sandoval* and concluding imposition of upper term did not require resentencing under Senate Bill 567 where all aggravating factors would have been found true by jury beyond a reasonable doubt]), even if we could conclude some of the aggravating factors identified by the trial court unquestionably would have been found true by a jury beyond a reasonable doubt, at least two involve facts and circumstances we have no degree of certainty the jury would have found true beyond a reasonable doubt.

Significantly, on counts 5 and 6 for rape by threat, the jury was split evenly and ultimately was unable to reach a verdict; and the jury acquitted defendant on the charge of making criminal threats against K. As a result, we cannot say with any confidence the jury credited all of K.'s testimony—indeed, it appears they did not do so fully. While the

12.

jury did find defendant guilty of continuously sexually abusing K. during her childhood, it is unclear whether the jury would have found that conduct involved a high degree of cruelty, viciousness and callousness or that it involved violence or threats—aggravating factors the court identified. These factors encompass subjective and undefined terms that a jury may have assessed in any number of different ways, especially since the jury appears not to have credited all of K.'s testimony. (*Sandoval, supra*, 41 Cal.4th at p. 840 ["it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court"].)

Although *Sandoval* permits a harmless error finding under the Sixth Amendment if a single aggravating factor underlying an upper term sentence unquestionably would have been found true by the jury, this is a different context and the record does not clearly indicate the trial court necessarily would have imposed the upper term absent its consideration of all the aggravating circumstances it identified. The trial court did not impose the upper term across the board to the other section 288.5 convictions; the court instead elected to impose a middle and two lower terms, indicating it was trying to "achieve some balance between the various factors on both sides." The aggravating factors here are also distinguishable from *People v. Flores*, where the court concluded Senate Bill 567 did not require resentencing of an upper term sentence based on aggravating factors not found true by the jury or admitted by the defendant. (*People v. Flores, supra*, 75 Cal.App.5th at pp. 500–501].) In that case, the aggravating factors utilized by the trial court included true findings on prior conviction allegations that were easily and readily provable by public records; the defendant's probation status at the time of the offenses; and his performance while on probation—all of which were subject to little factual dispute and provable by official records. (*Id.* at p. 501.)

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of

13.

the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Because the record does not clearly establish how the court would have balanced the sentencing factors with the limitations imposed under Senate Bill 567 and amended section 1170, resentencing is necessary. (See *People v. Buycks* (2018) 5 Cal.5th 857, 896.)

### B. Fines and Assessments

The parties agree the court operations and facilities assessments, imposed on a per-conviction basis, must be reduced to account for the vacatur of the convictions on counts 2, 3 and 4. Thus, the $160 court operations assessment must be reduced to $40 (§ 1465.8, subd. (a)), and the $120 court facilities assessment must be reduced to $30 (Gov. Code, § 70373, subd. (a)(1)) to reflect only the single remaining conviction on count 1. The parties also agree the court's modification of the restitution amount *after* a notice of appeal had been filed must be vacated—the parties maintain the court lacked jurisdiction to amend the restitution amount after the notice of appeal was filed.

In light of our conclusion that a full resentencing is warranted under Senate Bill 567, these remaining sentencing issues are moot. The trial court will have the opportunity to consider the applicable fines, fees and assessments anew at the time of resentencing.

## DISPOSITION

The judgment of conviction as to counts 2, 3 and 4 is reversed and vacated. Consistent with this opinion, the matter is remanded to the trial court for a full resentencing. We express no opinion on how the court should exercise its sentencing discretion under Senate Bill 567 and amended section 1170.